UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


SHEILA K. PERKINS, et al.,     :
                               :
     Plaintiffs,               :     NO. 1:07-CV-00003
                               :
                               :
     v.                        :     **OPINION AND ORDER**
                               :
                               :
GLOBAL FITNESS HOLDINGS, LLC,  :
et al.,                        :
                               :
     Defendants.               :


     This matter is before the Court on Defendant Royce
Pulliam's Motion to Dismiss (doc. 22), Plaintiffs' Memorandum in
Opposition (doc. 23), and Defendant's Reply (doc. 24).  For the
reasons stated herein, the Court DENIES Defendant's Motion to
Dismiss.

**I. Background**

     According to Plaintiffs' Amended Complaint, on July 30,
2006, Plaintiffs Bradley Richey ("Richey") and Sheila Perkins
("Perkins") went to Gold's Gym - Western Hills ("the gym") to
inquire about purchasing memberships (doc. 17).  After a gym
employee or employees allegedly told Plaintiffs they could pay
their respective dues with cash or check, the method of payment for
which they allege they opted, Plaintiffs both entered into consumer
installment contracts with the gym (Id.).  Plaintiffs contend that
although they were told that payment by cash or by check was

acceptable, as a formality, the gym required each contract to include an authorization for the Defendants to deduct dues from a bank account or credit card (Id.). According to Plaintiffs' Amended Complaint, the gym employee or employees represented to Plaintiffs that the gym would not actually deduct any payments from the account or credit card (Id.). With the understanding that no dues would be deducted from her account or credit card, Perkins allowed the Defendants to put her bank account and credit card numbers on both of Plaintiffs' contracts (Id.). Defendants also required Plaintiffs to pay their August dues and their last month's dues; Perkins wrote a check in the amount of $114.99 to cover both of their deposits (Id.).

On August 8, 2006, the Defendants deducted two payments of $21.29 from Perkins' bank account (Id.). When Perkins called the Defendants regarding the deduction, the gym told Perkins that they had her signature on both contracts which gave them authorization to make the deductions and that they would not cease making further deductions from the account (Id.). On August 30, 2006, Defendants faxed Perkins a copy of Richey's contract which contains what Plaintiffs claim is Perkins' forged signature.

Plaintiffs originally brought this action against Defendant Global Fitness Holdings, LLC ("Global") on January 3, 2007, asserting fraud, Consumer Practices Act violations, Conversion, Breach of Contract, and Breach of Privacy (doc. 2).

-2-

All of these claims arise out of Plaintiffs' membership contract dispute with the gym, which is owned and operated by Defendant Western Hills Fitness, LLC ("Western Hills") (doc. 22). Western Hills has no Chief Executive Officer, Chief Financial Officer, President, or Director of Business Relations, but is instead managed by its sole member, Global (doc. 23). Accordingly, on February 5, 2007, Plaintiffs filed an Amended Complaint, adding Western Hills as well as Global's Chief Executive Officer, Royce Pulliam (doc. 22). On May 8, 2007, Pulliam filed the instant Motion to Dismiss pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6) (Id.).

## II. Defendant's Motion to Dismiss

Defendant Pulliam filed the instant motion pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs have failed to state a claim upon which relief can be granted (Id.). Specifically, Pulliam contends that, with the exception of blanket allegations against the Defendants in general, Plaintiffs have not asserted any of the essential elements necessary to "pierce the corporate veil" and state a cause of action against him in his individual capacity (Id.). Under Ohio law, argues Pulliam, he could only be held liable for corporate misdeeds where (1) his control over the corporation was so complete that the corporation has no separate mind, will, or existence of its own; (2) his control of the corporation by those to be held was exercised in

such a manner as to commit fraud or an illegal act against the Plaintiffs; and (3) injury or unjust loss resulted to the Plaintiffs from such control (Id. citing Belvedere Condominium Unit Owners' Association v. R.E. Roark Companies, Inc., 67 Ohio St.3d 274, 289, 617 N.E.2d 1075, 1086 (Ohio, 1993)).  While Pulliam concedes that Plaintiffs have clearly met the first requirement, he argues they failed to allege either the second or third (doc. 22).

**III. Plaintiffs' Memorandum In Opposition**

Plaintiffs agree with Defendant Pulliam that Belvedere is the controlling case when it comes to piercing the corporate veil in Ohio, but argue they are not required to quote its language verbatim in alleging their Complaint (doc. 23).  Plaintiffs contend that after using the identical language found in Belvedere for the first requirement, Plaintiffs then alleged with specificity that Defendants, including Pulliam, committed fraud in the course of the transactions which are the subject of this lawsuit, and that Plaintiffs suffered loss as a result (Id.).  According to Plaintiffs, these allegations satisfy the requirements of Belvedere (Id.).

Plaintiffs further argue they need not pierce the corporate veil to hold Pulliam personally liable for violations of the Consumer Sales Practices Act ("CSPA")(Id.).  According to Plaintiffs, Pulliam, as Global's Chief Executive Officer, is the manager of Global, and since Global manages Western Hills, Pulliam

therefore manages Western Hills as well (Id.).  The single purpose
for the existence of Western Hills is to sell memberships to the
gym (Id.).  Plaintiffs explain that the CSPA defines a "supplier"
as a "seller, lessor, assignor, franchiser, or other person engaged
in the business of effecting or soliciting consumer transactions,
whether or not he deals directly with the consumer," (Id.).
Furthermore, they argue that as the Chief Executive Officer and
Manager of Global, the CSPA imposes a duty on Pulliam to assure
that the company's salespersons comply with the law and that the
company's Membership Agreements comply with the law (Id.).
Plaintiffs allege that Pulliam was a supplier, as defined by the
CSPA, and should be held liable for the alleged violations (Id.).

        Finally, Plaintiffs argue that Pulliam has personally
misled this Court as to the actual involvement of Global in the
transactions that give rise to Plaintiffs' claims (Id.).  Global
filed an earlier motion to dismiss claiming that it did not own or
operate the gym and Pulliam personally offered supporting testimony
in an affidavit (doc. 6).  However, at the time Pulliam and Global
filed their motion, Pulliam was aware that Global was controlling,
operating and managing the gym pursuant to the Operating Agreement
of Western Hills Fitness, LLC (doc. 23).  Pulliam also knew that
Global was depositing the income that Western Hills generated into
the checking account of "Global Fitness Holdings LLC DBA Golds Gym
Western Hills #11," (Id.).  Plaintiffs contend that Pulliam was not

only personally involved in the operation of the gym as the CEO of Global, but has also actively participated in an attempt to mislead this Court as to the liability of Global, and therefore his personal liability (Id.).

**IV. Defendant's Reply**

Pulliam reiterates his assertion that Plaintiffs have failed to specifically allege all the elements of the Belvedere test for piercing the corporate veil, but then more broadly attacks the nature of Plaintiffs' claims (doc. 24). Citing Universal Coach, Inc. v. New York City Transit Authority, Inc., 90 Ohio App.3d 284, 629 N.E.2d 28 (1993), pursuant to Federal Rules of Civil Procedure, Rule 9(b), Pulliam argues that Plaintiffs have not made their allegations of fraud with sufficient particularity, failing to assert the specific facts upon which the claims are based (Id.). According to Pulliam, since Plaintiffs only refer to him under the blanket term of "Defendants" and never allege that they had any dealings with him, they have not sufficiently asserted the fraud requirement in Belvedere (Id.).

In the same vein, Pulliam argues that Plaintiffs' general allegations of harm and injury are insufficient under Belvedere because they do not contain any specific allegation that the injuries or unjust losses resulted from Pulliam's control over Global (Id.). Pulliam further cites Bell Atlantic Corporation v. Twombly, 127 S.Ct. 1955 (2007), which he claims held that specific

facts must be alleged to withstand a motion to dismiss (<u>Id.</u>). In light of this holding and Pulliam's assertion that Plaintiffs have not alleged any specific details, Pulliam argues the claims against him should be dismissed (<u>Id.</u>).

Pulliam next addresses Plaintiffs' assertion that they need not pierce the veil in order for the Court to find Pulliam liable under the CSPA (<u>Id.</u>). Pointing to the Amended Complaint (doc. 17), Pulliam indicates that Plaintiffs specifically alleged that Global and Western Hills were suppliers under the CSPA, but made no reference to himself as a supplier (<u>Id.</u>). According to Pulliam, since Plaintiffs have failed to allege that he was a supplier under the CSPA, the related claims against him should be dismissed (<u>Id.</u>).

Finally, Pulliam contends that Plaintiffs' assertions that he made an intentional misrepresentation to the Court are groundless (<u>Id.</u>). While Pulliam acknowledges there may be a factual dispute in the case, he disagrees that the factual dispute is grounds for any cause of action against him (<u>Id.</u>). It may, Pulliam admits, be grounds for asserting claims against Global or for impeaching Pulliam, but he argues those conclusions do not create grounds for a cause of action against him (<u>Id.</u>).

**V. Discussion**

Construing all well-pleaded facts liberally in favor of the Plaintiffs, as the Court is required to do in the context of a

motion to dismiss, <u>Scheuer</u>, 416 U.S. 232, 236, the Court finds it inappropriate to dismiss Plaintiffs' Complaint against Defendant Pulliam. Contrary to Pulliam's argument (docs. 22, 24), Plaintiffs do in fact allege each of the <u>Belvedere</u> requirements (doc. 17). 67 Ohio St.3d at 289. As Pulliam concedes, Plaintiffs adequately articulate his complete control over the corporation, thus meeting the first prong of <u>Belvedere</u>. <u>Id.</u> As for the remaining requirements, Plaintiffs allege gym employees misrepresented the financial arrangement and forged Perkins' signature so as to effectuate unauthorized deductions from her account. These allegations obviously describe fraud or illegal acts. Next, Plaintiffs allege that the gym's actions resulted in different total costs of membership as to their respective contracts, which they detail. Finally, Plaintiffs allege they suffered frustration and aggravation. In the context of this Amended Complaint, these allegations are adequately specific to show that Plaintiffs suffered injury or unjust loss. 67 Ohio St.3d at 289.

The Court also finds well-taken Plaintiffs' argument as to the particularity of their allegations. It would be unnecessarily redundant for Plaintiffs to re-assert each claim specifically against Pulliam when obviously he is included in the term "Defendants". Moreover, the Court finds the alleged fraudulent acts of gym employees can be attributed to Pulliam as a "supplier" under the CSPA. Ohio Rev. Code 1345.01(C)(a person can

qualify as a "supplier" when they engage in the business of soliciting consumer transactions, whether or not the person deals directly with the consumer).  Finally, the record reflects that there may be some merit in Plaintiffs' allegations as to discrepancies in Pulliam's statements (docs. 6, 22).  For these reasons, the Court finds it inappropriate to dismiss Plaintiffs' claims against Pulliam at this time.

**VI. Conclusion**

Accordingly, the Court DENIES Defendant Royce Pulliam's Motion to Dismiss (doc. 22).

SO ORDERED.

Dated: October 2, 2007          /s/ S. Arthur Spiegel
                                                  _____

                                                  S. Arthur Spiegel
                                                  United States Senior District Judge